**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONNA MARIE HEINTZ, )
)
    Plaintiff, )   No. 07-1174
)
    vs. )
)
FAYETTE COUNTY AREA )
VOCATIONAL TECHNICAL SCHOOL, )
DR. EDWARD D. JEFFREYS, and )
WILLIAM C. TRIMBATH )
    Defendants. )

## OPINION AND ORDER

Plaintiff (hereinafter, "Heintz") filed a Title VII action alleging, *inter alia,* gender discrimination. All three Defendants filed summary judgment motions primarily arguing that Heintz's problems at work were not gender-based; rather, they claim her problems resulted from a personal dispute with a co-worker, Defendant Trimbath. Heintz claims that Defendants' argument is pretextual. She claims that both of the individual Defendants ("Jeffreys" and "Trimbath") attempted to establish a personal relationship with her, and as a result of her declining their invitations, her work relationships with each of them deteriorated, creating a hostile work environment. For the reasons set forth herein, I am granting in part and denying in part the motion filed by Trimbath as well as the motion filed on behalf of Jeffreys and Fayette County Vocational Technical School, (hereinafter, "the School").

### I. Factual and Procedural Background

The School hired Heintz as an instructional learning support teacher in June of 2000. She also served as the School's Perkins grant coordinator for a period of time. From 2000 to 2002, Heintz

claims she was subjected to at least two overtures made by her co-worker, Trimbath, in an attempt to establish a personal relationship with her. Similarly, from 2001 to 2004 Heintz claims she was subjected to three or more overtures made by her supervisor, Jeffreys.[1]

From October of 2004 and throughout 2005, Heintz complained to Jeffreys about Trimbath's conduct, allegedly suggesting she believed he was harassing her due to her sex. Jeffreys disagrees that Heintz's complaints about Trimbath arose out of gender-based harassment. The parties agree that Heintz complained to Jeffreys about Trimbath's conduct shortly before and after Trimbath lost a union election. Following the election, Trimbath wrote a letter to union members which offended Heintz. Nothing in Trimbath's letter has anything to do with Heintz specifically nor women generally. Heintz wrote a letter to the same union members in response to Trimbath's letter, causing Trimbath to seek legal counsel with respect to Heintz's letter. Trimbath's attorney threatened to sue Heintz for slander. During the course of these events, Heintz complained to Jeffreys about Trimbath's letter and conduct toward her.

Heintz accused Trimbath of physically assaulting her on August 26, 2005 during an in-service educational program. Heintz told Jeffreys that Trimbath pushed her when she attempted to get him to sign an attendance record before the start of the program. Jeffreys reviewed the attendance sheets and confirmed that Trimbath failed to sign the attendance record. Within four days of the alleged incident, Jeffreys formally interviewed six individuals, including Heintz and Trimbath, and recorded their statements. Heintz stated that Jeffreys only spent ten minutes taking her statement and claims that she felt "rushed" by Jeffreys. Trimbath, per his recorded statement, told Jeffreys,

---

[1] From 2004 to 2005, Jeffreys was the assistant director of the School. He became the acting director of the School sometime during 2005 when the executive director, Mr. Fibbi, became ill. Jeffreys was named executive director in 2006. No matter what his title, at all times relevant, Jeffreys was Heintz's superior.

"[i]f it [meaning the physical contact with Heintz] happened, it was not because I went after her, I don't remember ever being near her." Of the remaining four people who provided statements, none saw Trimbath push Heintz.

Heintz alleged that she sustained injuries as a result of the August 26, 2005 incident and she received workers' compensation benefits for those injuries, after being rendered unable to work from October of 2005 to January 9, 2006.[2] The School did not contest Heintz's workers' compensation claim which established that she had been injured in the course and scope of her employment on August 26, 2005.

After discussing the incident with the School's solicitor, Jeffreys opted not to discipline Trimbath, claiming he lacked sufficient information to do so. Instead, he instructed Trimbath and Heintz to stay away from one another. According to Jeffreys, both before and after the August 26, 2005 incident, Jeffreys asked Trimbath, Heintz and two other people at the School to take anger management classes. None of the four attended such classes and Jeffreys took no further action to ensure that they did.

On September 1, 2005, six days after the alleged assault, Jeffreys and Mr. Fibbi met with Heintz and gave her a warning about her "professionalism," suggesting that she could be part of the next series of staff cutbacks. The parties seem to agree the meeting was called to discuss Heintz's alleged untimely filing of some Perkins-related reports. Given the timing and her belief that the reports were timely filed, Heintz claims the warning was made in response to her complaints about

---

[2] Per Jeffreys, in August of 2005 when the alleged pushing incident occurred, the School was in the process of developing a detailed employee policy manual. At the time of Heintz's complaint, Jeffreys relied on a "combination" of a less detailed policy manual, "past practices," and advice from the School's solicitor, as to how to handle the pushing matter. Presumably, there was either a "less detailed" policy manual or no policy manual in place when Heintz made her initial complaints in October, 2004 about Trimbath's conduct.

Trimbath. Jeffreys stated that Heintz resigned as Perkins Coordinator in either 2004 or 2005. Heintz claims Jeffreys pressured her to resign.

The parties agree that when Heintz returned to work on January 9, 2006 following her workers' compensation leave, Jeffreys instructed her to move out of her office. Jeffreys claimed that he did so because her office was a secure room that was needed to store old financial documents. Jeffreys also stated that very few teachers had both classrooms and offices. Heintz disagrees with Jeffreys, claiming that his reasons for stripping her of her office are pretextual in nature because her office was used to store "junk," fifteen teachers had offices while only six did not, and in order for someone to gain access to her former office, now a storage room, the person would have to walk through her classroom. Heintz suggests that for all of these reasons, removing her from her office was purely retaliatory. Both parties agree that there was a delay in getting certain wires and equipment moved out of her office and into her classroom but they disagree as to why, and they disagree as to whether Jeffreys took prompt action to ensure that Heintz had the necessary equipment to be able to work from her classroom.

On January 10, 2006, Heintz received an anonymous threatening note in her school mailbox telling her "not to get too comfortable" because she would not "be there for long." Heintz showed the note to Jeffreys and the police were contacted. An internal investigation into the incident performed by the school yielded no information as to who wrote and/or delivered the note. Heintz complains that Jeffreys did not actually investigate the incident on behalf of the School.

In addition to the note, Heintz's car was keyed on more than one occasion while parked on school property. Heintz complained to Jeffreys, the police were notified, but the vandal was not discovered. The School permitted Heintz to park in a more secure area, but only after her car had

been keyed more than once. Heintz complains that Jeffreys' investigation and remediation were inadequate.

Heintz also claims that Trimbath told his students that she had wrongfully accused him of assault in an attempt to "cause trouble" for him. Heintz believes that some of Trimbath's students, in an effort to show their support for Trimbath, vandalized her car and took other actions off school property to intimidate her. Jeffreys admitted that at some point in time Heintz told him that she was afraid of Trimbath.

Heintz filed a complaint with the PHRA and EEOC simultanesously. The complaint indicates: (1) from October of 2004 to October of 2005, Heintz made numerous complaints to Jeffreys about Trimbath harassing her due to her sex; (2) on September 1, 2005, Jeffreys cautioned her to watch her professionalism and warned her that staff cutbacks were imminent and that she could be let go; (3) on January 9, 2006, she was asked to vacate her office, was provided minimal assistance in moving heavy objects, and was deprived of phone and internet lines for a prolonged period of time; (4) after receiving an anonymous, threatening note in her school mailbox and reporting it to Jeffreys, she was ultimately told that nothing could be done; and (5) Jeffreys exacerbated the problems with Trimbath by encouraging her to file a report concerning some of the harassing incidents and then provided a copy of the report to Trimbath.

The PHRC's findings of fact indicate that the Defendants failed to provide information that Jeffreys attempted to develop a personal relationship with Heintz on several occasions. The agency also issued findings related to: (1) Trimbath's alleged physical assault on Heintz; (2) Heintz's decision to submit a workers' compensation claim as opposed to filing a police report against Trimbath with respect to the assault; (3) vandalism to Heintz's vehicle while parked on school

property; (4) Heintz's receipt of the anonymous, threatening note; and (5) Heintz's loss of use of her office. Ultimately, the PHRC found that even though Heintz could establish a *prima facie* case for sexual discrimination, the Defendants articulated legitimate, non-discriminatory reasons for their actions, and determined the reasons were not pretextual in nature.

Heintz filed her complaint on August 27, 2007 with this court. I granted in part and denied in part the Defendants' motion to dismiss (docket no.14), ultimately resulting in Heintz filing a second amended complaint on November 14, 2007. The Defendants' arguments for summary judgment are with respect to Heintz's second amended complaint. (*See*, docket no. 16).

## II. Standard of Review

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Knabe v. Boury*, 114 F.3d 407, 410 (3d Cir. 1997) (citing F.R.Civ.P. 56). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When considering a motion for summary judgment, the courts examine the facts in the light most favorable to the non-moving party. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden

of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986).

While summary judgment is usually disfavored in employment discrimination cases, it is appropriate when a plaintiff relies on mere inferences, conjecture, speculation or suspicions. *Anderson v. School District of Philadelphia*, 1998 U.S. Dist. LEXIS 4232, 1998 WL 151034, *5 (E.D.Pa. 1998). Similarly, summary judgment may not be granted if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed. *Ideal Dairy Farms, Inc. v. Labatt, Ltd.*, 90 F.3d 737, 744 (3rd Cir. 1996), *citing Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1381 (3rd Cir. 1991). Moreover, "any unexplained gaps in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment." *Ibid, quoting Ingersoll-Rand Financial Corp. v. Anderson*, 921 F.2d 497, 502 (3rd Cir. 1990).

### III. Analysis

This opinion addresses both the joint motion for summary judgment filed by the School and Jeffreys as well as the motion for summary judgment filed by Trimbath.

**A. Defendants' request for summary judgment on Heintz's Title VII and PHRA claims**

My November 8, 2007 order terminated Heintz's Title VII claims against Jeffreys and Trimbath. Heintz's amended complaint complied with my Order, only raising the Title VII claim with respect to the School. Accordingly, I will address any Title VII argument only as it pertains to the School, but will address any PHRA argument with respect to all three Defendants.

The School requests summary judgment on Heintz's Title VII claim, and the School and Jeffreys request summary judgment on Heintz's PHRA claim, suggesting that these claims are barred because Heintz failed to exhaust her administrative remedies with respect to them. Alternatively,

they suggest these claims are also time-barred under the 300-day rule. (*See*, 42 U.S.C.S. §2000e-5(e)). The School and Jeffreys also contend these claims should be dismissed because Heintz cannot establish a hostile work environment since the acts she complains of were not motivated by her sex, no pervasive and severe discrimination occurred, and because the School took prompt, corrective actions. Trimbath argues that the PHRA claim against him should be dismissed because Heintz failed to produce any evidence that Trimbath aided or abetted the School or Jeffreys in any discriminatory conduct pursuant to 43 Pa.C.S.A. §955(e). In addition, Trimbath points out that he was merely Heintz's co-worker and at no time did he hold supervisory authority over her. I will address each of these arguments in turn.

### 1. Exhaustion of administrative remedies

Starting with arguments raised by the School and Jeffreys, the law is clear that a plaintiff must exhaust all administrative remedies before bringing a claim for judicial relief. *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir.1997) (*citing, McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)). When determining whether a lawsuit is limited to the scope of the administrative charge, the Third Circuit adopted a "fact-specific" approach, requiring a careful examination of the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis. *Robinson,* 107 F.3d at 1024.

The test in the Third Circuit for exhaustion of administrative remedies is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir.1996) (citing *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984)).

In *Mroczek v. Bethlehem Steel Corp. et al.*, 126 F. Supp. 2d 379 (E.D. Pa. 2001), the

defendants requested a dismissal arguing that the plaintiff alleged sexual harassment claims in her civil lawsuit but failed to raise those claims in her administrative filings. The district court noted that the check box portion of her administrative filing only indicated "retaliation," but within the narrative section of her filing, the plaintiff made statements setting forth sufficient details, such that sexual harassment, in addition to retaliation for reporting it, fell within the scope of the complaints presented to the administrative agencies. *Id.* at 385.

In the instant matter, the School and Jeffreys suggest Heintz only made one claim known to the PHRC – her retaliation claim – and this was the only claim that the PHRC investigated. However, Heintz's PHRA/EEOC complaint and the PHRC's findings of fact clearly illustrate the fallacy of this argument. The findings clearly indicate that the PHRC investigated more than just a retaliation claim. Furthermore, there is a close nexus between those facts which support Heintz's retaliation claim and those which support her discrimination claims. As a result, the claims set forth in Heintz's second amended complaint can be said to fairly fall within the scope of her PHRA/EEOC complaint, and the investigation arising therefrom. Accordingly, I deny the School's and Jeffreys' request for summary judgment on the Title VII and PHRA claims based on a failure to exhaust administrative remedies.

### 2. Timely filing of claims

I also reject the School's and Jeffreys' alternative request to dismiss Heintz's Title VII and PHRA claims as time barred under 42 U.S.C.S. §2000e-5(e). It is undisputed that Heintz simultaneously filed her formal complaint with the PHRA and EEOC on January 29, 2006, and per the statute, only those claims which occurred within 300 days prior to the cross-filing (*i.e.* those that occurred after April 29, 2005) are actionable. However, Heintz contends that all acts of

discrimination, even those that predate April 29, 2005, demonstrate a continuous pattern of discrimination thereby entitling her to pursue those claims under the continuing violation theory.

The continuing violation theory was borne out of Supreme Court case law which recognized that the filing of a timely charge is "a requirement that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982). In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) the Supreme Court drew a distinction between discrete, individually actionable acts[3] and those acts that are not individually actionable, but which may be aggregated to establish a hostile work environment claim.[4]

Once it has been determined that the acts in question are not discrete acts, the continuing violation theory operates to allow a plaintiff to pursue a Title VII claim for discriminatory conduct that began prior to the filing period <u>if</u> the plaintiff can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant. *West v. Philadelphia Electric Co.,* 45 F.3d 744, 754 (3d Cir. 1995) (emphasis added). To demonstrate a continuing violation, the plaintiff must: (1) demonstrate that at least one act occurred within the filing period, and (2) establish that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *Jewett v. International Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981), *cert. denied*, 454 U.S. 969, 102 S. Ct. 515, 70 L. Ed. 2d 386 (1981).

---

[3] Third Circuit has identified termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation as part of a non-exhaustive list of discrete, individually actionable acts. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir.2006).

[4] Defendants argued that *National Railroad* stands for the proposition that a discrete event is any act which occurs on a date certain and suggests all alleged discriminatory acts which occurred prior to April 29, 2005 occurred on dates certain and are thus time barred. I disagree with Defendants' over-generalization of the holding in *National Railroad* as well as their fact-based assertions relative to this matter.

When determining whether alleged discriminatory acts are closely related enough to constitute a continuing violation, the Third Circuit adopted the Fifth Circuit's approach in *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983). *See*, *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001). The Third Circuit concluded that courts should consider at least three factors: (1) subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or are more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Cowell, supra.,* at 292 (citing *Berry, supra.,* at 981). Agreeing with the *Berry* Court, the *Cowell* Court held that the consideration of "degree of permanence" was the most important of the factors. *Ibid.*

In this case, none of the acts fall within the description of a discrete act as defined by *O'Connor,* and thus, are not individually actionable. Some of these non-discrete acts occurred within the filing period, (*i.e.* Jeffreys' response to Trimbath's alleged assault on Heintz, Jeffreys' investigation into the anonymous note and car keying incidents, and Jeffreys' decision to strip Heintz of her office), thereby meeting the first prong of the continuing violation theory under *Jewett*.

Turning to the second prong, Heintz offers evidence, if believed, that suggests the following pattern of discrimination: Jeffreys made overtures from 2001 to 2004 which she rejected; from October of 2004 and throughout 2005, Heintz complained to Jeffreys about Trimbath's conduct;[5]

---

[5] Trimbath's conduct of which Heintz complained from 2004 to 2005 centered on the union election. Heintz offers no evidence that during this time Trimbath was making personal advances toward her nor does she present any evidence tending to show that he was harassing her due to her gender as defined by 29 CFR §1604.11.

Jeffreys retaliated by inadequately addressing Heintz's complaints about Trimbath's conduct; within days of lodging her complaint about Trimbath's alleged assault, Jeffreys and Mr. Fibbi cautioned Heintz about her professionalism, warning her that she could lose her job; and finally, the day Heintz returned after being off due to injuries she sustained as a result of the alleged assault, Jeffreys stripped Heintz of her office. Construing the evidence in favor of Heintz as the nonmoving party, Jeffreys' acts appear to be connected in terms of subject matter, frequency and degree of permanence and thus, Heintz's PHRA claims against the School and Jeffreys and her Title VII claim against the School are not time-barred under the continuing violation theory.

### 3. *Prima facie* case for hostile work environment

All three Defendants argue that the Title VII and the PHRA claims must fail because Heintz cannot make out a *prima facie* case under a hostile work environment theory since the acts she complains of were not motivated by her sex nor were they pervasive and severe. The School and Jeffreys also argue that because the School took prompt corrective actions the Title VII and PHRA claims must be dismissed.

In *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990), the Third Circuit held that "five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability."[6] A hostile work environment

---

[6] Similarly, under the PHRA, in order to establish a hostile work environment a complainant must prove that she: (1) suffered intentional discrimination because of her race or gender; (2) the harassment was severe or persuasive and regular; (3) the harassment detrimentally affected her; (4) the harassment would detrimentally affect a

cannot be analyzed on an incident-by-incident basis, but rather the court must examine the totality of the circumstances. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 715 (3d Cir. 1997), *citing, Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993).

In order to be actionable, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Faragher v. City of Boca Raton* 524 U.S. 775, 787, 118 S.Ct. 2275 (1998). *Faragher* directed courts to "[look] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." 524 U.S. at 787-788 (internal cite omitted).

In this case, in addition to raising PHRA claims against Jeffreys and Trimbath, Heintz asserts that the School is vicariously liable for the actions and inactions of Jeffreys. The School argues that it cannot be liable since it did everything possible to assuage Heintz's concerns and remedy the situations she complained of pertaining to Trimbath.

When a plaintiff alleges vicarious liability, such liability automatically attaches when the plaintiff can prove that the employer took a "tangible employment action" (*i.e.* an act resulting in a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits). *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). When no tangible employment action is present, a defending employer may raise an affirmative

reasonable person of the same protected class; and (5) the harasser was a supervisory employee or agent. 43 P.S. § 955(a).

defense comprised of two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.* at 765.

In the instant matter, the three Defendants argue that Heintz's hostile work environment claim fails because the acts of which Heintz complains had nothing to do with her gender, and even if the complaints were related to her sex, they were not severe or pervasive.[7] In support of their arguments, the Defendants solely discuss Trimbath's alleged acts towards Heintz, but completely ignore Jeffreys alleged acts toward her.[8]

Heintz and Jeffreys have presented conflicting testimony on the first two grounds set forth in *Andrews* thereby creating genuine issues of material fact for a jury to determine. For example, Heintz claims that in 2004, when she was complaining to Jeffreys about Trimbath's behavior before the union election, Jeffreys was making his own overtures, which she declined. If Heintz is believed, a jury could find that instead of adequately addressing her concerns about Trimbath's conduct, Jeffreys made personal overtures which she declined, thereby creating a hostile work environment. Jeffreys' denial that he made such overtures creates an issue of fact for the jury to decide. In

---

[7] Since the three Defendants only raise arguments under prongs one and two of the *Andrews* test with respect to the dismissal of the hostile work environment claim, these are the only two prongs I will address.

[8] Heintz has alleged that Trimbath made advances from 2000 to 2002, but there is no evidence that she ever complained to anyone about these overtures. Paragraph 13 of Heintz's concise statement of material facts reads as follows: "In addition to being aware of his own overtures directed toward the Plaintiff, Defendant Dr. Jeffreys was aware of Defendant Trimbath's overtures also directed toward Heintz as it had come up in conversation sometime afterward." Heintz's statement that Trimbath's sexual overtures had "come up in conversation" clearly indicates that Heintz never sought out Jeffreys to lodge a formal complaint about Trimbath's advances. Moreover, Heintz admitted that her 2004-2005 complaints about Trimbath's conduct related to his aggressive behavior before, during and immediately following a union election. Heintz offers no evidence tending to show that her 2004-2005 complaints had anything to do with Trimbath's 2000-2002 advances, or that in 2004-2005 he renewed these advances. All evidence of record indicates that Trimbath's 2004-2005 behavior toward Heintz had nothing to do with her gender.

addition, if Heintz is believed, the jury will also have to decide whether Jeffreys adequately addressed Heintz's concerns about Trimbath, and if not, whether Heintz's refusal of Jeffreys' advances relates in any way to Jeffreys' decision as to how to address her concerns about Trimbath.

Moreover, in addition to Heintz's testimony, Jeffreys stated that if he were to date a subordinate he did not know that "it necessarily would be violation of the policy at the school, but [he] would not personally do that." Jeffreys also admitted that around the time that Heintz was complaining about Trimbath no "detailed" policy manual actually existed, so he relied on "past practices" and advice from the school district's solicitor when determining how to deal with Heintz's complaints. Since the School did not have a complete or "detailed" policy manual and since Jeffreys allegedly made his own overtures toward her while she was seeking redress for Trimbath's alleged aggressive behavior, a jury could find that Heintz encountered a hostile work environment. Based on the foregoing, I decline to grant Jeffreys' request for summary judgment with respect to Plaintiff's PHRA hostile work environment claim.

Turning to the School's arguments, it asserts it took prompt, corrective action every time Heintz complained about Trimbath, and thus, it cannot be liable under Title VII for the hostile work environment. As I have indicated, Heintz has alleged, but has presented no evidence tending to show that Trimbath's conduct was gender-based conduct. To the contrary, Heintz admitted that she complained about Trimbath's conduct before and after a union election. The loss prompted Trimbath to write a letter to union members which offended Heintz. His letter prompted her to write a response wherein she labeled Trimbath a "wanna-be dictator" causing Trimbath to seek legal counsel and threaten to sue Heintz for slander. Heintz presented no evidence indicating that she ever complained about Trimbath's 2000-2002 advances toward her; nor is there any evidence that

Trimbath engaged in any other sex-based conduct toward Heintz at any time subsequent. Accordingly, although the School was aware of Heintz's complaints about Trimbath's conduct, this conduct in no way related to Heintz's gender.

Heintz has alleged Jeffreys was simultaneously making his own advances toward her when she complained about Trimbath's conduct in 2004. The School failed to respond to this allegation with any evidence. Accordingly, accepting Plaintiff's testimony as true for purposes of this motion for summary judgment, the Title VII and PHRA claims for hostile work environment against the School cannot be dismissed.

Turning to Trimbath's motion for summary judgment on the PHRA claim, having already determined no evidence exists to support an allegation that Trimbath's acts of which Heintz complained in 2004-2005 were gender-based (see footnote 8), and since Heintz has not presented any evidence tending to show how Trimbath aided or abetted Jeffreys in any alleged discriminatory practice under 43 Pa.C.S.A. §955(c), Trimbath's request for summary judgment will be granted with respect to the PHRA hostile work environment claim.

### 4. *Prima facie* case for retaliation

Next, the School moves for dismissal of Heintz's Title VII retaliation claim. Heintz, who asserted retaliation under 42 U.S.C. § 2000e-3(a), must show by the preponderance of the evidence that: (1) she engaged in activity protected under Title VII; (2) the School took adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Kachmar v. Sungard Data Services, Inc*., 109 F.3d 173, 177 (3d Cir. 1999).

If Heintz can prove all three elements, then the School must articulate a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the School articulates such a reason, in order to successfully oppose the motion for summary judgment, Heintz must point to specific facts from which a jury could determine that the reason proffered is just a pretext for discrimination. *Ibid.*

The School also argues that Heintz cannot meet the second retaliation requirement, but in the alternative it suggests that even if she can meet all three requirements, it had a legitimate reason for its employment decisions. The School suggests that Heintz has no evidence from which a jury could determine its reasons were pretextual. I disagree with the School.

Starting with the second requirement of Heintz's Title VII retaliation claim, Heintz is protected not from all retaliation, but from retaliation that produces an injury or harm. *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67, 126 S.Ct. 2405 (2006). The School's actions "must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 57. Heintz must show that a reasonable employee would have found the challenged action "materially adverse," meaning the School's action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, (cites omitted).

The *Burlington* Court stressed <u>material</u> adversity to distinguish significant from trivial harms and utilized a "reasonable employee" standard to inject objectivity when judging harm. *Ibid.* The Court also held that any given act of retaliation will depend on the particular circumstances, noting, "[c]ontext matters." *Id.* at 69. Normally, petty slights, minor irritations, or the simple lack of civility will not deter a complainant. *DiCampli v. Korman Communities,* 257 Fed.Appx. 497, 501 (3d Cir. 2007).

The School argues that Heintz's retaliation claim is solely predicated upon the trivial loss of

her office space. Heintz counters this argument claiming that the School (through Jeffreys) retaliated against her when she reported the alleged assault by threatening her with job loss and failing to adequately discipline Trimbath. She also claims that while she was away from the School on her workers' compensation leave, Jeffreys verbally maligned her professionally and personally to her co-workers. Finally, she suggests the School retaliated when she complained about her car being keyed while on school property (presumably by not immediately permitting her to park in a more secure area) and when she complained about the anonymous note (presumably by not doing a thorough investigation).

Of all Heintz's counter-examples, the only one that meets the first requirement – activity protected under Title VII – would be Jeffreys' alleged verbal abuse of her while she was off work and receiving workers' compensation benefits.[9] Paraphrasing *Burlington*, the anti-retaliation provision of Title VII prohibits the employer from taking actions that are likely to deter a reasonable employee from complaining to the EEOC. At first blush, although it appears unlikely that a reasonable employee could easily be dissuaded from making or supporting a charge of discrimination based upon the alleged verbal abuse and although I am inclined to categorize Jeffrey's conduct as a petty slight, minor irritation, or simple incivility, a jury could find that she did not do so because she was so dissuaded.

Accordingly, summary judgment on Heintz's retaliation claim is denied.

---

[9] I have already determined that Trimbath's alleged assault does not rise to conduct protected under Title VII since all evidence indicates his post-2004 conduct arose out of a personal dispute between the two over a union campaign and election and not due to Heintz's rejection of Trimbath's advances or any other gender-based behavior.

**B. Defendants' request for summary judgment on Heintz's Equal Protection Claim**

All three Defendants assert Heintz's equal protection claim must be dismissed predicated upon the *Andrews* test discussed above. Pursuant to *Andrews,* and as discussed in greater detail in section A.3. above, I will dismiss the Equal Protection claim against the School and Trimbath, but decline to dismiss this claim with respect to Jeffreys for the same reasons articulated in section A.3. above.[10]

**C. Defendants' request for summary judgment on Heintz's §1983 Claim**

Heintz's second amended complaint seeks relief under 42 U.S.C.A §1983 claiming that her Fourteenth Amendment right to due process and her entitlement to be free from state-created dangers was violated. All three Defendants dispute these allegations.

The seminal case on this matter is *DeShaney v. Winnebago County Social Services Dept.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Therein, the Court concluded that the Due Process Clause does not impose an affirmative obligation on the state to protect any citizen who is not in state custody. Relying on *DeShaney*, the Third Circuit in *Schieber v. City of Philadelphia*, 320 F.3d 409 (3d Cir. 2003), created the "state-created danger doctrine" by holding that while the Due Process Clause does not impose an affirmative duty to protect a citizen who is not in state

---

[10] The School argued that even if *Andrews* did not preclude the School from liability under Title VII, dismissal of the equal protection claim was warranted since the School was immune from liability under a *respondeat superior* doctrine. I also agree with this assertion based on *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Congress did not intend as a matter of federal law to impose vicarious liability on municipalities for violations of federal civil rights by their employees, except in a situation where the municipality's policy or custom causes a constitutional injury), and *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (court must determine as a legal matter the identity of those officials whose decisions represent the official policy of the local government). Heintz offers no evidence showing that Jeffreys had the authority or ability to make decisions which served as official school policy. Although he made day-to-day administrative decisions with respect to operating the School, all proffered evidence indicates that he needed approval of a superintendent and/or the School's board of directors to do anything more.

custody, a constitutional violation can occur when state authority is <u>affirmatively</u> employed in a manner that injures a citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention." *Schieber* at 413, (emphasis added).

In *Bright v. Westmoreland County,* 443 F.3d 276, 281 (3d Cir. 2006), the Third Circuit outlined the elements of a "state-created danger claim" as follows: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

The School argues that as a municipality it cannot be liable because there is no evidence that it had a policy, practice or custom which harmed Heintz, and claims that there is no evidence that it failed to properly train its employees. Trimbath argues that since he never held a supervisory position at the School relative to Heintz (with the possible exception of his role as union official), he was not a state actor for the purposes of Heintz's §1983 claim. I agree with the School's and Trimbath's relative positions and will grant their request to dismiss the §1983 claim against each of them.

Jeffreys argues that Heintz cannot maintain her §1983 claim because Jeffreys did not act with a degree of culpability that shocks the conscience and at no time did he use his authority in a way that created danger for Heintz. While I disagree that Jeffreys' actions could not shock the

20

conscience, I concur that he did not <u>affirmatively</u> use his authority in such a way that created danger for Heintz as required by *Scheiber*.

Negligence is not enough to shock the conscience under any circumstances. *Scheiber v. City of Philadelphia,* 320 F.3d 409, 419 (3d Cir. 2003). The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). In a "hyperpressurized environment," an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient. *Ibid.*

Given the evidence presented, if a jury believed Heintz's testimony that Jeffreys made overtures while she sought his help in addressing her concerns about Trimbath, the jury would have to determine whether Jeffreys' behavior shocked their conscience. Because there is no evidence that Jeffreys made these personal advances in a "highly pressurized situation" requiring a quick response, Heintz would only need to present evidence of deliberate indifference to prove his behavior "shocks the conscience."

Despite the fact that a jury could believe Heintz and thus have to determine whether his advances under the circumstances shock the conscience, the final question is whether Jeffreys affirmatively used his authority "in a way that created a danger" to Heintz or that rendered her "more vulnerable to danger than had he not acted at all." *Id* . at 311, *citing Bright*, 443 F.3d at 281. The following evidence taken in the light most favorable to Heintz indicates the following affirmative acts taken by Jeffreys: (1) Jeffreys inadequately handled Heintz's dispute with Trimbath; (2) Jeffreys failed to discipline Trimbath following an incident where Trimbath exhibited a temper toward other co-workers; and (3) Jeffreys recommended Trimbath attend anger management classes but never

enforced his attendance at such classes.

Given the sum total of this evidence, I find that the link between the Jeffreys' affirmative conduct and the alleged pushing incident between Trimbath and Heintz is far too attenuated to justify imposition of liability on Jeffreys. Therefore, I will dismiss Heintz's §1983 claim as to all three Defendants.

**D. Defendants' request for summary judgment on Heintz's intentional tort claims**

**1. Intentional infliction of emotional distress claims**

Pennsylvania imposes a two-year statute of limitations on claims for intentional infliction of emotional distress. Heintz first raised her intentional infliction of emotional distress claim in her first amended complaint, filed on October 12, 2007.

The School and Jeffreys argue that Heintz's emotional distress claim is time barred since it arises out of the alleged advances Jeffreys made from 2001 to 2004. Simply put, they argue that because Heintz did not raise her claim for emotional distress within two years from 2004, she is precluded from raising it now. Heintz counters this argument with a one sentence response suggesting that under the continuing violation theory she is not time-barred, and she offers no legal precedent for this argument.

Although I did find that Jeffrey's 2001 to 2004 advances toward Heintz were part of an ongoing practice or pattern of discrimination, thereby preserving Heintz's PHRA claim against Jeffreys under the continuing violation theory, I find nothing to support Heintz's argument that her emotional distress claim must likewise be preserved.

An action for intentional infliction of emotional distress requires a plaintiff to establish four elements: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3)

it must cause emotional distress; (4) that distress must be severe. *Doe v. Liberatore*, 478 F.Supp.2d

742, 765 (M.D.Pa.2007), *quoting Hoy v. Angelone*, 456 Pa.Super. 596, 610, 691 A.2d 476, 482

(1997). "Extreme and outrageous conduct is conduct which is 'so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized society.'" *Id.*, quoting *Strickland v. University of Scranton*, 700

A.2d 979, 987 (Pa.Super.1997).

Paragraph 39 of Heintz's second amended complaint clearly asserts a claim for intentional

infliction of emotional distress based on the alleged extreme and outrageous conduct exhibited by

Jeffreys when he made his advances. However, Heintz has affirmatively stated that she was last

subjected to Jeffreys advances in year 2004. Thus, according to her own testimony, the outrageous

conduct of which she complains and which caused her emotional distress had an end date of 2004.

Since Heintz herself has argued that the date of the last advance – *i.e.* the date of the last act of

outrageous conduct – occurred sometime in 2004, the statute of limitations on Heintz's claim for

intentional infliction of emotional distress expired sometime in 2006. She is time-barred from

asserting this claim and the intentional infliction of emotional distress will be dismissed.

### 2. Assault and battery claim

Heintz has alleged she sustained injuries as a result of Trimbath's assault and battery on her

person on August 26, 2005. Trimbath moves for summary judgment on Heintz's assault and battery

claim, asserting entitlement to qualified immunity under 42 Pa.C.S.A. §8541 and §8545.

However, section 8550 of the same code indicates that "in any action against an employee

... on account of an injury caused by the act of the employee in which it is judicially determined that

the act of the employee caused the injury and that such act constituted ... willful misconduct, the

provisions of sections 8545 ... shall not apply." 42 Pa.C.S.A. § 8550. "Willful misconduct" that will lead to forfeiture of official immunity is more than mere negligence or even gross negligence; instead, this phrase has the same meaning as term "intentional tort." *Vicky M. v. Northeastern Educational Intermediate Unit 19*, 486 F.Supp.2d 437 (M.D.Pa.2007). Under Pennsylvania law, "willful misconduct" for which an employee of local agency is not immune, is misconduct which the perpetrator recognized was misconduct but still carried it out with intention of achieving exactly that wrongful purpose. *In re City of Philadelphia Litigation*, 938 F.Supp. 1264 (E.D.Pa.1996).

In the instant matter, there were no witnesses to the alleged physical contact between Heintz and Trimbath. Heintz's testimony indicates her belief that Trimbath intentionally pushed her out of his way. Trimbath, when questioned about the incident, denied that he intentionally pushed her. Specifically he said, "[i]f it [meaning the physical contact with Heintz] happened, it was not because I went after her, I don't remember ever being near her."

Whether Trimbath intentionally intended to come into contact with Heintz and harm her are factual questions a jury must answer. Since Trimbath's entitlement to immunity depends upon the fact-finder's determination with regard to intent, I must deny Trimbath's summary judgment request with respect to the assault and battery claim.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONNA MARIE HEINTZ,       )
                                  )
        Plaintiff,         )    No. 07-1174
                                  )
        vs.                )
                                  )
FAYETTE COUNTY AREA     )
VOCATIONAL TECHNICAL SCHOOL, )
DR. EDWARD D. JEFFREYS, and   )
WILLIAM C. TRIMBATH       )
        Defendants.      )

## ORDER

And now, this 14th day of May, 2009, for reasons set forth in the accompanying Opinion, the Defendants' motions for summary judgment are granted in part, producing the following result:

1. Plaintiff's PHRA claim against Trimbath is dismissed;
2. Plaintiff's Equal Protection claims against the School and Trimbath are dismissed;
3. Plaintiff's §1983 claims are dismissed as to all Defendants;
4. Plaintiff's intentional infliction of emotional distress claims are dismissed as to all Defendants.

However, Defendants' motions for summary are also denied in part. The remaining claims are:

1. Plaintiff's PHRA claim against Jeffreys;
2. Plaintiff's Title VII and PHRA claims against the School;
3. Plaintiff's Title VII-retaliation claim against the School;
4. Plaintiff's Equal Protection claim against Jeffreys; and
5. Plaintiff's Assault and Battery claim against Trimbath.

A pretrial conference has been scheduled for May 21, 2009 at 11 a.m. in chambers.

                             BY THE COURT:

                             s/ Donetta W. Ambrose
                             Donetta W. Ambrose,
                             Chief U.S. District Judge